## Staunton.

## HAYNES AND ANOTHER V. PETERSON.

### September 17, 1919.

1. RESCISSION, CANCELLATION AND REFORMATION—*Fraudulent Conveyances—Burden of Proof—Degree of Proof.*—The law is settled that in suits for the cancellation of a deed on the ground of fraud the burden of proof rests upon the plaintiff to prove the allegations upon which he seeks relief by satisfactory proof; the cases generally even holding that fraud must be proved beyond a reasonable doubt.

2. RESCISSION, CANCELLATION AND REFORMATION—*Fraudulent Conveyances—Degree of Proof—Burden of Proof—Case at Bar.*— In the instant case, a suit to rescind a sale of land under a power of attorney, the evidence upon all material allegations was conflicting and fell far short of. proving bad faith on the part of the defendants, failing to prove a conspiracy between the attorney in fact and the vendees, the evidence preponderating in favor of the view that the vendees were *bona fide* purchasers of the land at a fair price and without notice of any circumstance affecting the validity of their title.

   *Held:* That a decree of the lower court setting aside the sale was erroneous.

3. CONVICTS — *Rights of — Control Over Property — Execution of Power of Attorney.*—There is no statute in Virginia that deprives a convict of the power to make contracts or conveyances of his real estate, and corruption of blood and forfeiture of estate on conviction of felony as at common law has been expressly abolished by statute. Code of 1904, sec. 3883. So, in Virginia, the right of a person to take, hold, and dispose of his property, real and personal, is not affected by his attainder of felony. Therefore, a convict is capable of executing a valid power of attorney.

4. CONVICTS—*Rights of.*—There is no statute or decision in Virginia which denies to a convict the right to contract, acquire, hold, and dispose of property.

5. CONVICTS—*Committee for—Code of 1904, Sections 4115-4121.*— The provisions found in chapter 202 of the Code of 1904, authorizing the appointment of a committee for the estate of a convict sentenced to confinement in the penitentiary for more

than one year, to administer his estate, and to sue and be sued
in respect to it, do not apply where the convict has exercised
the right to dedicate his property to the payment of debts and
support of his family before the appointment of a committee.

Appeal from a decree of the Circuit Court of Wise county.
Decree for complainant. Defendants appeal.

*Reversed.*

The opinion states the case.

*Coleman & Carter, W. S. Cox* and *S. H. Bond,* for the
appellants.

*Bond & Bruce* and *Vicars & Peery,* for the appellee.

WHITTLE, P., delivered the opinion of the court.

The material facts of this case are these: Appellee, A.
T. Peterson, was convicted on two indictments for forgery
at the June term, 1910, of the Circuit Court of Scott county,
and on July 9th following was sentenced to confinement in
the penitentiary for six years. At the time of his convic-
tion, Peterson was heavily indebted, and at the suit of some
of his creditors his lands had been rented to pay liens, and
other creditors were threatening to bring suit to subject
his entire real estate to sale to satisfy their liens by judg-
ments and deeds of trust. In that emergency, on July 8,
1910 (after verdict, but before sentence), Peterson executed
a power of attorney, appointing his brother, W. P. Peter-
son, his attorney in fact to sell such of his lands as might
be necessary to discharge his debts, and to execute and de-
liver deeds of conveyance to purchasers. He furthermore
authorized and directed his attorney in fact to apply the pur-
chase money as follows: (1) To the payment of all his
just debts; (2) to meet the necessary expenses of his
family; and (3) the remainder, if any, to be placed in some

safe bank to his credit. Then followed a general grant of·
power to the attorney in fact to do and transact any and all
such business for and in behalf of his principal as the lat-
ter could do if present and acting for himself. The instru-
ment was signed, sealed and acknowledged, and admitted
to ˉrecord.

The attorney in fact subsequently sold the 179 acres of
land in controversy to appellants, J. K. Haynes and his wife,
B.· V. Haynes; for $2,000, and on January 21, 1911, con-
veyed the property to them by deed in which the wife of
A. T. Peterson united. Several years later Haynes and ·
wife sold and conveyed the land, together with certain live
stock, to their co-appellant, J. A. Jessee, Jr., for $3,000.
In May, 1914, A. T. Peterson was pardoned and discharged
from the penitentiary; and shortly thereafter filed the bill
in this case, alleging that at the time of the execution of
the power of attorney he had been convicted of felony and
was civilly dead and incompetent to contract or transact
business of any character, and, therefore, the power of at-
torney executed by him was void and of no effect and con-
ferred no authority upon W. P. Peterson to sell or con-
vey his real estate. The bill also charged that before W. P.
Peterson sold the land to Haynes and wife, complainant
had revoked the power of attorney, and that W. P. Peter-
son and his grantees and J. A. Jessee, Jr., had notice of the
revocation at the dates of their respective purchases; that
the sale to Haynes and wife was for a grossly inadequate
price; that the parties knew there was no necessity to sell
the land for the purposes set forth in the power of attorney,
and that only $1,250 of the purchase money was applied to
the purchase mentioned therein; and that Haynes and wife
conspired with W. P. Peterson wrongfully and fraudulently
to deprive complainant of his property.

After the execution of the power of attorney, and the
sale and conveyance of the land to the purchasers and ap-

plication of the purchase money as directed by the power, W. P. Peterson qualified as committee for A. T. Peterson.

So far as the case involved in this appeal is concerned, the bill prays that the deeds from the attorney in fact to the Hayneses and from the latter to Jessee be canceled and the land restored to complainant. The defendants demurred to the bill, and their demurrer having been overruled, answered, denying all the material allegations of the bill affecting their good faith, or the validity of their title to the land, and insisting that they were purchasers for valuable and adequate consideration, without notice of any rights or equities in any way impairing their title. The circuit court, by the decree appealed from, set aside both deeds, but made provision for the return of the purchase money in each instance, with interest and the actual cost of permanent improvements put upon the land, subject to a rebate for its use and occupation and any damage that might have been done to the same while in the possession of the purchasers, and that each of the parties pay his own costs, and that no attorney's fee be taxed.

[1] The law is settled that in suits for the cancellation of a deed on the ground of fraud, the burden of proof rests upon the plaintiff to prove the allegations upon which he seeks relief by satisfactory proof, the cases generally even holding that fraud must be proved beyond a reasonable doubt.

[2] In this instance, the evidence upon all material allegations is conflicting and, to say the most for it, falls far short of proving bad faith on the part of appellants. It utterly fails to prove a conspiracy between the attorney in fact and appellant, J. K. Haynes, wrongfully and fraudulently to deprive A. T. Peterson of the land in controversy. To the contrary, the evidence preponderates in favor of the view that Haynes and wife were *bona fide* purchasers of the land at a fair price and without notice of any circumstance

affecting the validity of their title. The same may be affirmed of appellant, J. A. Jessee, Jr., who, as stated, subsequently purchased the land from the Hayneses. It is true the decree of the circuit court is silent as to the grounds on which cancellation was granted; yet, it bears internal evidence of the fact that it was not decreed on the theory that the defendants had been proved to be guilty of bad faith or fraud, since it restores as far as practicable the *status quo* of the litigants and directs that no attorney's fee be taxed, and that each party pay his own costs.

[3] We shall notice briefly the remaining contentions of appellee in support of the decree. The point is stressed that the conviction of A. T. Peterson of a felony and his sentence to the penitentiary rendered him *civiliter mortuis* and incapable of executing a valid power of attorney. There is no statute in Virginia that deprives a convict of the power to make contracts or conveyances of his real estate; and corruption of blood and forfeiture of estate on conviction of felony as at common law has been expressly abolished by statute. Code, section 3883. So, in Virginia, the right of a person to take, hold and dispose of his property, real and personal, is not affected by his attainder of felony. 2 Min. Inst. (4th ed.), pp. 655, 659; 2 Minor on Real Property, sec. 1096. The above is the prevailing doctrine on the subject in this country in the absence of statutory inhibition. Clark on Contracts (2nd ed.), sec. 89; Elliott on Contracts, sec. 266; note to *Harmon* v. *Bowen*, 17 L. R. A. (N. S.) 502.

It is also contended that while A. T. Peterson was confined in the penitentiary, he expressly revoked the power of attorney to W. P. Peterson by a letter written to his wife, of which letter his attorney in fact and the purchasers of the land from him had notice before the sale was made. It is denied that the power of attorney in question was a mere naked power revocable at the will of the principal, because

it not only empowered the attorney in fact to sell and convey the land, but moreover dedicated the proceeds of sale to the payment of debts and support of the family, and imposed upon the attorney a trust relation to effectuate those objects, and to deposit the remainder in bank to the credit of the principal. 2 Kent's Com., p. 1057, sec. 644; *Hunt* v. *Rousmanier's Adm'r,* 8 Wheat. 174, 5 L. Ed. 589; *Sulphur Mines* v. *Thompson,* 93 Va. 293, 25 S. E. 232.

It is not necessary, however, to decide that question, since we do not think the evidence sustains the contention that A. T. Peterson wrote such a letter to his wife. He did not testify on the subject, and the evidence of his wife with respect to the letter is weakened by the fact that after the alleged receipt of it, she voluntarily united with the attorney in fact in conveying the land to the purchasers and acknowledged the deed for record.

[4, 5] The remaining contention is that the provisions found in chapter 202 of the Code, authorizing the appointment of a committee for the estate of a convict sentenced to confinement in the penitentiary for more than one year, to administer his estate and to sue and be sued in respect of it, afforded the only remedy by which his estate could be subjected to the payment of debts.

There is no statute or decision in this State that denies to a convict the right to contract, acquire, hold and dispose of property, and obviously the proceedure provided by chapter 202 does not apply where the convict has exercised the right to dedicate his property to the payment of debts and support of his family before the appointment of a committee.

Upon the whole case, we are of opinion that the decree of the circuit court is erroneous, and must be reversed; and this court will enter such decree as the trial court ought to have entered, and dismiss the bill with costs.

*Reversed.*