## CIRCUIT COURT OF THE CITY OF RICHMOND

Willie Alfred Gordon

v.

Myron Alfred Gordon et al.

April 21, 1989

Case No. N-5825-1

By JUDGE RANDALL G. JOHNSON

Clifford Gordon died testate in August, 1983. His will devised certain real property in the City of Richmond to his grandson, Myron A. Gordon, a minor. Willie A. Gordon, the testator's son and Myron's father, was named executor, and he has duly qualified as such in this court. The will did not give the executor power to sell or encumber the real property.

In a document titled "First and Final Account of Willie A. Gordon, Executor of the Estate of Clifford Gordon, Deceased, August 22, 1983, to January 22, 1985," the executor listed receipts and disbursements of the estate each totalling $3,437.50. Among the receipts is an item shown as "Amount loan [sic] to estate by Willie A. Gordon" in the amount of $2,293.85. This account was submitted to, but rejected by, the Commissioner of Accounts.

Subsequently, the executor prepared a second document, this one titled "Final Account of Willie A. Gordon, Executor of the Estate of Clifford Gordon, Deceased, August 22,

1983, to July 20, 1987." This document reflects receipts and disbursements each totalling $6,937.00, the only receipt being designated "Amount loan [*sic*] to Estate by Willie A. Gordon." This account, too, was rejected by the Commissioner of Accounts.

Finally, the executor prepared a third document, also entitled "Final Account," but for the period August 22, 1983, to December 1, 1988. On this document, total receipts and disbursements are each listed at $8,362.08, with $7,787.08 being designated "*Gift* from Willie A. Gordon." (Emphasis added). This account was also not approved by the Commissioner of Accounts. Shortly thereafter, however, the very same piece of paper, with certain typed changes, was accepted by the Commissioner. At the *ore tenus* hearing on the pending petitions, the executor testified that he neither made the changes nor knew that they had been made. In fact, neither the original paper nor the modified one is signed by the executor. In any event, the accepted account deleted two items of disbursement, gave a more detailed description of one item of receipt, and corrected a mathematical error which had been made by the executor. There remained, however, the item of receipt designated "Gift from Willie A. Gordon," but now in the amount of $6.359.50.

In accordance with applicable statutes,[1] the Commissioner posted and filed the account as changed. On February 6, 1989, the clerk of this court certified that no exceptions to the account were filed within fifteen days after the account was filed in her office.

Meanwhile, on December 14, 1987, prior to submitting the last account to the Commissioner, the executor filed his petition in this court seeking permission under Va. Code § 64.1-57.1 to encumber the real property devised to Myron Gordon. Such power was needed, according to the petition, to reimburse the executor for loans made to the estate, and for legal fees incurred by the estate. On December 5, 1988, the executor tendered an amended petition seeking the additional power to sell the subject property, again to reimburse the executor for loans made

---

[1] See Va. Code Section 26-27, et seq.

to the estate, and for legal fees incurred by the estate.[2] No hearing on either petition was held, nor any other action taken by the court, until the *ore tenus* hearing on March 23, 1989. The executor now asks the court to grant the powers sought in his amended petition and to refer the case to a commissioner in chancery for a determination of the amount of reimbursement and legal fees to be paid. Myron Gordon, through his guardian ad litem, argues that the court lacks jurisdiction to grant the powers sought and that the petitions should be dismissed. The court agrees.

Va. Code § 64.1-57 sets forth a myriad of powers which a testator or trustor may incorporate by reference in a will or trust instrument. Among those powers is the power to "sell, assign, exchange, transfer and convey or otherwise dispose of, any or all of the investments and property, either real, personal or mixed, which may be included in, or may at any time become part of, the trust or estate;" and the power to "borrow money for such periods of time and upon such terms and conditions . . . as to the fiduciary shall seem advisable . . . and to mortgage or pledge such portion of the trust or estate as may be required to secure such loan or loans."

Where a testator or trustor fails to incorporate the powers enumerated in § 64.1-57, § 64.1-57.1 allows the circuit court in which the personal representative or trustee is qualified, upon motion of such personal representative or trustee, to grant all or a part of such powers. It is this section under which the executor's petition and amended petition are filed.

In arguing that this court lacks jurisdiction to consider the executor's request, the guardian ad litem points to Va. Code § 26-34, which deals with confirmation of the Commissioner of Account's report on the account of a fiduciary. Specifically, that section states, in pertinent part:

---

[2] While the amended petition was stamped "received and filed" by the clerk's office, no order was ever entered allowing it to be filed. The court, however, will enter such an order now.

> The report, to the extent to which it may be so confirmed by an order of the court or judge upon exceptions filed, or in whole when confirmed by lapse of time without exceptions, as provided in § 26-33, shall be taken to be correct, except so far as it may, in a suit, in proper time, be surcharged or falsified . . . .

The guardian ad litem argues that because the Commissioner's report on the executor's account has now been confirmed, the estate is closed and no further power of any kind can be conferred upon or exercised by the executor. The guardian ad litem further argues that because the executor's final account listed no loans or legal fees incurred by the estate, he is now estopped from claiming such items in this proceeding.

On the other hand, the executor contends that the filing of a final account does not preclude a personal representative from continuing to seek or exercise powers relating to an estate. In support of his argument, the executor cites *First National Exchange Bank of Roanoke v. Seaboard Citizens National Bank of Norfolk*, 200 Va. 681, 107 S.E.2d 408 (1959). In that case, an administrator d.b.n.c.t.a. filed suit seeking advice and guidance as to the proper distribution of funds it received approximately thirty years after the testator's death. Specifically, the court was asked to decide whether such funds should pass through the testator's will or intestate. The court held that the funds passed under the will. On appeal, the estate of one of the testator's heirs argued that this holding was incorrect since the testator's estate had already been "finally" settled. The Supreme Court disagreed:

> But in the Virginia probate law and practice, the powers of a personal representative of a decedent do not come to an end in any such fashion, automatically upon settlement of final accounts or in any other event; nor are they here, as they are in many other jurisdictions, terminated by the entry of an order of discharge. There is no such thing as an order declaring the estate fully administered and discharging

the personal representative from further duties and responsibilities. In this respect, a fiduciary acting as personal representative of a deceased person's estate is wholly unlike other fiduciaries. His continued possession of his plenary powers *indefinitely* may be characterized as unique. 200 Va. at 686 (*quoting* Lamb's Virginia Probate Practice, § 224, p. 357 (emphasis in original)).

Thus, according to the executor, this court has jurisdiction to grant the powers sought here. Such argument misses the point.

In reading § 64.1-57, it is obvious that the powers enumerated in that section are powers which can only be exercised with regard to an *existing* estate. The power to receive *additions* to the estate, to sell *estate* property, to sell or acquire options on property *held* by the estate, to lease property *included* in the estate, and so on, are absolutely meaningless unless there is something which can be characterized as constituting a presently existing estate. Indeed, § 64.1-57.1 provides that one of the factors which the court may consider in granting or denying the powers sought is "the character of the estate *to be administered*." (Emphasis added). Here, there is no such estate.

In his final account which was ultimately confirmed, the executor made no mention of loans made to, or legal fees incurred by, the estate. In fact, the very act of filing a *final* account is the fiduciary's representation to the court that nothing further regarding the estate remains to be done; that is, that the estate is closed. While *National Bank* holds that an estate is never "finally settled" so as to preclude the collection and administration of after-acquired property, it does not follow that the powers enumerated in § 64.1-57 can be granted where the personal representative has reported that the estate has been finally settled, *and* no after-acquired or after-discovered property is shown to exist. In short, where no estate property exists, there can be no power.

In making this ruling, the court is not unmindful of the executor's argument that he should not be bound by his final account because it was prepared and filed without benefit of legal counsel. It must be remembered,

however, that the executor's original petition was filed in December, 1987, a full year before his "final" final account. The amended petition, according to the certificate of service, was mailed to opposing counsel on December 1, 1988, the same day on which such account ended. Both of these papers were prepared and filed by competent legal counsel -- in fact, the same counsel whose fees were allegedly incurred by the estate. The court finds it incredible that the executor, having retained counsel to handle estate matters, would file his final account without consulting those counsel, especially in light of the previous accounts having been rejected by the Commissioner. Even if this is true, however, he did so at his own peril. He will not now be heard to complain that he should be excused for his folly.

The court is also cognizant of the executor's testimony that the first two documents he submitted as final accounts were rejected by the commissioner who told him to change the designation "loan" to "gift." Aside from the fact that these events should have prompted the executor to seek legal assistance in preparing his account, the court notes that § 64.1-57, which sets out the power of a fiduciary to borrow money on behalf of an estate, specifically provides that such power "includ[es] the power to borrow from the fiduciary, *if the fiduciary be a bank* . . . ." (Emphasis added). Since the testator's will in this case did not incorporate the power to borrow money, and since in any event the executor is not a bank, it is entirely understandable why the executor's designation of certain receipts as loans was not acceptable to the Commissioner.

The court is also not impressed with the executor's argument that it would somehow be unfair to the executor to find a lack of jurisdiction since whether it is termed a gift or a loan, the executor has paid money on behalf of the estate. This argument puts the cart before the horse. If the amount paid by the executor was a gift, he is not entitled to reimbursement. If it was a loan, the executor's account must be surcharged or falsified as provided in § 26-34. This must be done in a suit for that purpose, not in a petition under § 64.1-57.1. This is also true of legal fees allegedly incurred but not reported in the account. The court makes no finding on whether the executor himself may file such a suit.

In addition, an executor or creditor who has a claim against an estate may file suit against an heir or devisee to subject devised real estate to such debt. This, however, must be done *before* a request to sell the property since only after a determination that such a claim is valid may the real estate be sold. *See* § 64.1-181 *et seq.* Again, the court makes no finding as to whether this particular executor's actions preclude such a suit here. Any lawyer who has a claim against the estate also has this remedy.[3]

Finally, the amended petition names as a defendant Edna Richardson a/k/a Edna R. Gordon, who claims to be the widow of the testator and seeks a declaration of her interests. In light of the ruling made on the underlying request, no action need be taken with regard to her in this case.

A copy of an order consistent with this opinion, and which I have entered today, is enclosed. The case will remain on the docket to allow the guardian ad litem to submit a statement of his services rendered and fee requested.

---

[3] The court also notes that contrary to the executor's protestations that he has carried all of the burden while his son has all of the benefit, the executor has, since November, 1984, lived in the son's house rent-free. Any suit by the executor against his son would, of course, be subject to a cross-bill by the son for rent.